United States District Court
Southern District of Texas
**ENTERED**
April 01, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 4:11-CR-00477 |
| | § | |
| JASON MICHAEL LALL, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court in the above-referenced federal habeas corpus proceeding is Defendant-Movant Jason Michael Lall's ("Lall") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 140), two Briefs in Support (Docs. 141, 156), and Affidavit (Doc. 149). Plaintiff-Respondent United States' ("United States" or "Government") filed its Response to 28 U.S.C. § 2255 Motion and Motion to Dismiss Based on the § 2255 Waiver (Doc. 158), and Lall filed a Response to the Government's Motion to Dismiss (Doc. 161). United States Magistrate Judge Frances Stacy then ordered Lall's attorney, Dustan Neyland, to respond to Lall's allegations (Doc. 164). Attorney Neyland filed his Response (Doc. 165), and Affidavit (Doc. 165), and Lall and his mother each filed Affidavits in response thereto (Docs. 167, 168). Lall's mother also filed an additional Affidavit (Doc. 203).

Having considered the parties submissions, relevant law, witness testimony, and oral arguments, the Court is of the opinion that Lall's §2255 Motion should be denied on the remaining live claim that he instructed counsel to file a direct appeal and that counsel failed to do so.

### I. Background

On June 28, 2011 Lall was charged by Indictment with conspiracy in violation of 18

U.S.C. § 1349 (count one), access device fraud in violation of 18 U.S.C. §§ 1029(a)(3) and (2) (count two), access device fraud in violation of 18 U.S.C. §§ 1029(a)(2) and (2) (count three), and aggravated identity theft in violation of 18 U.S.C. §§ 1028A and 2 (counts four and five) (Doc. 27). Pursuant to a written Plea Agreement (Docs. 63, 147), Lall pleaded guilty to conspiracy to commit bank fraud and aggravated identity theft on November 22, 2011. On March 16, 2012, this Court sentenced Lall to a term of imprisonment of 105 months on count one, to be followed by a consecutive sentence of 24 months as to count two, for a total term of imprisonment of 129 months. Judgment was entered on March 23, 2012 (Doc. 131). When Lall did not appeal, his conviction became final on April 6, 2012. On or about March 14, 2013, Lall filed the instant § 2255 Motion (Doc. 140), and Brief in Support (Doc. 141), arguing that the Government breached the Plea Agreement. He also argued that counsel was ineffective for failing to object to the breach of the Plea Agreement, failing to raise meritorious objections to the loss amount calculation that was used to calculate his offense level and restitution, and for failing to file a notice of appeal after being instructed by Lall to do so.

On October 30, 2014, United States Magistrate Judge Frances Stacy recommended in her Memorandum and Recommendation that the Government's Motion to Dismiss be granted in part on all of Lall's claims, except for his claim that he instructed Neyland to file a direct appeal and counsel failed to do so (Doc. 177). On September 23, 2015, this Court adopted the Magistrate Judge's Memorandum and Recommendation as its own, denying Lall's § 2255 Motion in part on all claims except for his claim that Neyland failed to file an appeal as instructed (Doc. 190). By separate order, the Court set an evidentiary hearing to determine the validity of Lall's surviving claim (Doc. 191). After resetting the hearing once (Doc. 192), and subsequently granting the parties' Joint Motion to Continue Evidentiary Hearing (Doc. 199), on January 6, 2016, the

parties appeared before the Court requesting another continuance. On January 12, 2016, the parties returned and the evidentiary hearing was finally held before this Court.

## II. Legal Standard

The Sixth Amendment guarantees criminal defendants "reasonably effective" legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defendant. *Id.* at 687. The *Strickland* test, as it is known, applies to claims, like Lall's, that counsel was constitutionally ineffective for failing to file a notice of appeal. *Roe v. Flores-Ortega,* 528 U.S. 470, 477 (2000).

"Under *Flores-Ortega*, the first *Strickland* prong begins with the question whether counsel 'consulted' with the defendant regarding an appeal." *United States v. Cong Van Pham*, 722 F.3d 320, 323 (5th Cir. 2013). "Consulting" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making reasonable efforts to discover the defendant's wishes." *Flores-Ortega,* 528 U.S. at 478. When counsel has consulted with the defendant about appeal, he "performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* Thus, if Lall's allegation is true that he asked counsel to file a direct appeal of the conviction, and counsel failed to comply with his express instructions, prejudice is presumed. *See United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007) ("[E]ven where a defendant has waived his right to direct appeal and collateral review. . . . if the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to file an out-of-time appeal.").

If, however, counsel did not consult with the defendant about an appeal, then the question is whether that failure was unreasonable because it breached the duty to consult. *Flores-Ortega*, 528 U.S. at 478. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. To demonstrate interest in appealing a defendant need not use the "magic word 'appeal.'" *Cong Van Pham*, 722 F.3d at 324. Instead, when determining whether a duty to consult existed, courts take into account all the information counsel knew or should have known. *Flores-Ortega*, 528 U.S. at 480. One "highly relevant factor in this inquiry" is "whether the conviction follows a trial or a guilty plea." *Id.*

The second *Strickland* prong is satisfied when a defendant shows "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. A defendant need not show that "his hypothetical appeal would have had merit." *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). As with the inquiry under the first prong, "the question whether a defendant has made the requisite showing will turn on the facts of the particular case." *Flores-Ortega*, 528 U.S. at 485. Importantly, "[t]his second-prong prejudice test 'applies even where a defendant has waived his right to direct appeal and collateral review.'" *United States v. Cong Van Pham*, 722 F.3d 320, 324 (5th Cir. 2013) (quoting *Tapp*, 491 F.3d at 266).

### III. Discussion

The dispute at issue in this case is whether Lall instructed Neyland to file a direct appeal. In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden to

prove that he "more likely than not requested that [his attorney] appeal." *United States v. Nunez*, CIV.A. H-04-2367, 2007 WL 2873188, at *6 (S.D. Tex. Sept. 28, 2007) (citing *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999)). At the evidentiary hearing, it was the Court's role to view the demeanor and listen to the testimony of all the witnesses and to then weigh the credibility of the parties. *Id.* Having done so, the Court is not convinced that Lall has met his burden by a preponderance of the evidence. Specifically, the Court finds that Lall did not communicate an unambiguous request to Neyland to file a direct appeal.

### A. Evidentiary Testimony

Lall's trial counsel, Mr. Dustan Neyland was called as the first witness at the evidentiary hearing. Neyland began by testifying that as a practice he initiates discussions with clients about the federal appeal process long before sentencing and that Lall's case was no different. (Tr. 7–8). However, he did note that because Lall had been in the federal system before, he already "had a pretty good working knowledge of [the system]." (Tr. 8).

Although Neyland could not recall whether he told Lall what the time frame for appeal was (Tr. 16), he stated that whenever he received proposed documents from the Government, he discussed appeal generally with Lall because these documents contained language about appeal and the effect the plea agreement would have on Lall's right to appeal (Tr. 8, 10–11, 35–36). Neyland further testified that he again discussed appeal and the window for filing immediately after sentencing (Tr. 15–16, 19, 35, 55) and again, when he visited Lall at Joe Corley a few days later (Tr. 55–59).[1]

Neyland admitted on direct that he did not have a document memorializing Lall's

---

[1] The Court does note that earlier in his testimony, Neyland indicated that he had not discussed an appeal with Lall at any time after their post-sentencing meeting in the courthouse. (Tr. 19–24, 35-36). However, after having his memory was refreshed with his earlier affidavit, he testified that he and Lall did in fact discuss grounds for appeal when they met at Joe Corley. (Tr. 55–59).

decision not to appeal, but stated that he did not obtain a signed disclosure only because he and Lall "agreed together" not to appeal, and Neyland uses such disclosures only when a client goes against his advice. (Tr. 20). Neyland further averred if a client says he wants to appeal but the attorney does not believe there are arguable grounds to do so, an attorney's obligation is to file a notice of appeal contemporaneously with an *Anders* brief and motion to withdraw. (Tr. 30, 58).

Neyland unequivocally stated that Lall did not instruct him, nor indicate that he wanted to file a notice of appeal. (Tr. 36–40, 51, 57–58). He likewise stated that had Lall instructed him to do so, he certainly would have filed the appeal. (Tr. 31, 36–37, 58). Moreover, if he had any indication that Lall was interested in filing an appeal, Neyland testified that he would have discussed it with him and then filed the appeal. (Tr. 37). Neyland also stated that even had Lall said he wanted to file contingent on the success of the Rule 35 motion (Tr. 40), or could no longer afford to pay, Neyland would have filed a notice of appeal if requested to do so (Tr. 43).

In response to Lall's allegations that he made himself "unavailable throughout the time to appeal," Neyland testified that although he is on occasion unable to answer calls when in court on another case, he "is always available to [his] clients" and "never refused any phone calls." (Tr. 41–42). Neyland likewise stated that he did not refuse to answer Lall's mother, Annette Lall's calls or texts. (Tr. 44). He also averred that the text messages contained in Government's Exhibit 1 were the complete text message history between Annette and him. (Tr. 44). When Government counsel questioned him whether Annette's statements that she had texted him on two separate occasions about the approaching deadline to file an appeal were corroborated by the text history, he testified "there's no text . . . in my records that ever said that," and "she never texted me about deadlines approaching to file appeals." (Tr. 44, 48–51). Neyland did testify that at some point after the appeal deadline had passed, however, he received a request from Annette

to "say [he] forgot to file [the appeal]," a request he refused because he "couldn't lie and say [he] forgot about it if [he] didn't." (Tr. 52).

When questioned about his credentials, Neyland admitted that Lall's was his first, first-chair federal case and he had never filed a notice of appeal. (Tr. 4–5, 65). However, Neyland testified that he had completed a number of CLE courses on the federal criminal system (Tr. 10), assisted on several federal proceedings before taking Lall's case (Tr. 4), represented Lall in the predecessor state-court case (Tr. 3), consulted with other, more experienced attorneys when he had questions on Lall's case (Tr. 31), and was familiar with appeal waivers because he had practiced exclusively criminal law since becoming a member of the bar in 2007—including time spent with the Harris County DA's office (Tr. 5; 28–29). Neyland also stated that he had no disciplinary record and had never been the target of an ineffective-assistance-of-counsel claim. (Tr. 29).

### B. Annette's Testimony

Lall's mother, Annette Lall, was the second witness to testify. She testified that she discussed the appeal issue with Neyland after Lall's sentencing and instructed Neyland that Lall wanted to file a notice of appeal. (Tr. 68). She claims that she relayed this instruction to Neyland via both text message and phone call. (Tr. 68–69). Although she admitted on cross examination that her affidavit did not explicitly say that she told Neyland that Lall wanted to appeal, she claims that her affidavit implicitly included this statement. (Tr. 71–72). She further conceded that she did not have records of her text correspondence with Neyland, but testified that any complete record of these messages would include a statement that she told Neyland that Lall wanted to file an appeal. (Tr. 73).

Annette also testified that because Neyland was avoiding her and Lall's phone calls, she

told Neyland that the appeal deadline was approaching via text message on two occasions. (Tr. 74). Although she acknowledged that she never contacted the Southern District or Fifth Circuit to complain about the handling of her son's case (Tr. 75), on redirect she testified that she did not do so because she expected Neyland to be responsible for filing the appeal as instructed. (Tr. 77). In response to a question from the Government whether she asked Neyland to say that he had forgotten to file the notice of appeal, Annette testified that she did not remember. (Tr. 76).

### C. Lall's Testimony

The final witness to testify was Lall. During his testimony, Lall emphatically stated that he directed Neyland to file a notice of appeal. (Tr. 78, 98–99). He averred that he and Neyland first began discussing the appeal issue when they got the PSR back before sentencing (Tr. 79), but that it was not until after sentencing that he specifically instructed Neyland to file an appeal (Tr. 81), at which point Neyland responded, "I will file a notice of appeal as to our objections." (Tr. 99). Lall further testified that during his meeting with Neyland at Joe Corley on March 20, 2012, they again discussed the appeal. (Tr. 83, 87). Although he stated that he was aware that he had waived his right to an appeal as part of his plea agreement, Lall avers that Neyland never explained how the waiver in the plea agreement might affect his ability to appeal. (Tr. 84).

Lall then testified that during their meeting at Joe Corley, Neyland also suggested using a Rule 35 motion to correct the sentence. (Tr. 83–84). Lall avers that he then instructed Neyland to file the direct appeal if Neyland did not hear anything back on the Rule 35 motion. (Tr. 85, 87). Lall further testified that because Neyland was not returning his phone calls, he subsequently asked his mother to reach out to Neyland to let him know the time for filing an appeal was running out. (Tr. 86). Lall averred that when he next met with Neyland at FDC Houston in April, the time for filing an appeal had passed, so he asked Neyland why the appeal had never been

filed, to which Neyland responded that they needed to wait for the Government's response to their Rule 35 motion. (Tr. 88).

On cross-examination, Lall reiterated that Neyland replied in the affirmative when Lall asked him if they were going to appeal the sentence. (Tr. 90). He further testified that although he told Neyland to file the notice of appeal immediately after sentencing, he did not ask Neyland if he had filed the appeal when they met the following week at Joe Corley. (Tr. 91). He explained that during this second meeting, Neyland instead focused on the Rule 35 motion as the primary strategy for challenging the sentence. (Tr. 90–91). Lall testified that although Neyland was focused on the Rule 35, he and Neyland never agreed to eschew the appeal in favor of the Rule 35 motion. (Tr. 91, 101). Instead, he averred that he specifically instructed Neyland to file the notice of appeal if they did not hear back from the Government on the Rule 35 in the required amount of time. (Tr. 91, 101). When the two of them met again in April at FDC, Lall testified that he asked why the appeal had not been filed, but did not renew his request for Neyland to file an appeal, and this was the last time the parties discussed it. (Tr. 93–95). Although he testified that he instructed Neyland to file an appeal as early as right after sentencing (Tr. 93), Lall admitted that he did not try to reach out to the district court or court of appeals to complain that he was having problems with his attorney when he discovered the appeal had not been timely filed. (Tr. 96).

### D. Credibility determination

The parties are in agreement that Neyland consulted with Lall about the appeal issue. (Tr. 7, 79). Accordingly, the only question is whether Neyland failed to follow Lall's express instructions and if so, whether but-for this failure, Lall would have appealed. Because the Court simply does not find Lall or Annette's evidence to be credible on the question of whether Lall

expressly instructed Neyland to file an appeal, it need not proceed to the second *Strickland* prong. *See Sonnier v. Quarterman*, 476 F.3d 349, 356 (5th Cir. 2007) ("Both prongs must be satisfied for a defendant to carry his burden and thus, succeed on an ineffective assistance of counsel claim.").

First, Lall and Annette have strong motivations to fabricate their stories. They know that in order for Lall to succeed in obtaining relief under § 2255, they must establish that Neyland failed to comply with Lall's express instruction to file an appeal.

Second, the Court notes that there are various inconsistencies between the testimony, affidavits, and other record materials. For example, Annette testified and stated in her affidavit that she texted Neyland on two occasions to make sure he was aware that the appeal deadline was approaching. However, this claim is not corroborated by the record of text messages between Annette and Neyland. Further, Annette testified and attested in her affidavit that Neyland was not answering her or her son's calls and texts, but the text record indicates that Neyland responded to Annette several times a week between sentencing and mid-May, when the text record ends. The text record also indicates that during that time, Neyland visited Lall at least three times and spoke to him at least two to four times. Between sentencing and the latest that Lall could have appealed without claiming ineffective assistance of counsel,[2] Neyland texted Annette a total of 30 times, visited Lall twice, and spoke to Lall three times. Moreover, although Annette twice asks about an appeal during the test message history, she never once instructs Neyland to file an appeal on Lall's behalf, or asks about the status of the appeal that Lall allegedly clearly requested.

Lall's testimony is likewise discredited. He testified that Neyland "made himself

---

[2] Under Federal Rule of Appellate Procedure 4(b)(1)(A), a criminal defendant has 14 days from the entry of final judgement in which to appeal his sentence. However, if the court finds "excusable neglect or good cause," it may extend the time for appeal for an additional thirty days. Fed. R. App. P. 4(b)(4).

unavailable," but the text message history between his mother and Neyland indicates that Lall was in touch with Neyland fairly regularly. Moreover, Lall testified that he made himself crystal clear to Neyland in requesting an appeal when they met immediately after sentencing, and Neyland responded "I will file a notice of appeal as to our objections." However, in text messages between Annette and Neyland a few hours after sentencing, when Annette asks about possible grounds for appeal, rather than responding that he had spoken with Lall and they did in fact plan on appealing, Neyland simply replied, "I'll chat with Jason about it." This does not appear to be the response of someone who was unequivocally instructed to file an appeal only a few hours before.

Finally, Neyland's testimony is more credible in the Court's eyes. Neyland has no stake in Lall's claims and little to gain by misstating his dealings with Lall and Annette. Moreover, Neyland's version of his post-sentencing encounters with Lall and Annette is corroborated by the text message history. The Court also notes that Neyland had four years of criminal experience, including experience with appeal waivers before taking Lall's case; was well versed in Lall's case, having worked on it at the state level; and has never had a disciplinary issue or ineffective-assistance claim. Neyland categorically denied having been instructed to file an appeal, averring instead that the decision not to file an appeal was a strategic decision that he and his client, Lall, made together. While it is unfortunate that Neyland did not execute a document memorializing this decision, Lall's admissions that the Rule 35 motion was extensively discussed in several post-sentencing meetings with Neyland, Lall's failure to follow up on his alleged post-sentencing request to file an appeal in subsequent meetings and calls with Neyland during the time for appeal persuade this Court that Lall was aware of, and a party to, the strategic decision not to appeal. Instead, it appears that it was not until Lall discovered that he had a basis under § 2255 to

vacate, set aside, or correct his sentence if he claimed ineffective assistance of counsel that he argued Neyland failed to file the notice of appeal as he instructed.

### IV. Conclusion

The burden of establishing ineffective assistance of counsel was on Lall. Based on all of the above, the Court finds that Lall has not established by a preponderance of the evidence that he is entitled to relief on his ineffective-assistance-of-counsel claim based on the failure of counsel to file a direct appeal. For the foregoing reasons, it is hereby

**ORDERED** that Movant Lall's § 2255 motion is **DENIED** on the remaining live claim that he instructed counsel to file a direct appeal and that counsel failed to do so, and that claim is dismissed.

SIGNED at Houston, Texas, this 31st day of March, 2016.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE